Scileppi, J.
In December, 1962 the appellant and his codefendant, Cecil E. Brown, were tried jointly and convicted, upon a jury verdict, of robbery in the first degree. Appellant, as a third felony offender, was sentenced to a term of from 15-20 years.
In support of his coram nobis application, appellant raised two arguments: (1) the error caused by the introduction of testimony as to admissions made by his codefendant implicating him (Bruton v. United States, 391 U. S. 123), and (2) the contention that appellant was entitled to a Huntley hearing as to the voluntariness of his codefendant’s confession. The appellant, however, has abandoned the latter argument, thereby limiting his argument on this appeal solely to the alleged Bruton error.[1]
The joint trial consisted of the testimony of four witnesses — the complainant, James Greenwood, and the three police officers involved in the arrest and interrogation of the defendants. *171 Neither of the defendants took the stand or offered any evidence in their behalf.
Greenwood testified that on September 4, 1962, at about 4:00 p.m., he was standing outside the Manhattan store where he worked shining shoes. He stated that after having a conversation with a meter maid about a taxicab that was double parked, he went across the street to the .second floor of 1804 Amsterdam Avenue to get the driver of the cab. After his conversation with the driver, Greenwood testified that he was accosted by two men in the hallway of the building. One of the men, whom he identified as the oodefendant Brown, placed a gun at his side and warned him not to move while the other man, whom he identified as the appellant Baker, went through his pockets and took $50. At that point a woman (who was not a witness at the trial) entered the building and started to scream causing the defendants to run. As Greenwood emerged from the building, he observed the defendants being chased and captured by police officers.
As bearing on the question of Greenwood’s credibility, he testified that he had a prior record of six convictions—four for possession of narcotics, one for mail theft and one of policy. Moreover, although Greenwood testified that $50 was taken from him, Brown was found with only $27.75 and Baker had only $2 in his possession at the time of his arrest.
The testimony of the arresting police officers, Irwin Jacobs and Charles Paoli, was that pursuant to a conversation had with three men, the officers unholstered their guns and proceeded to the building where the robbery allegedly had taken place. Upon their arrival the defendants emerged from the building, looked in their direction and then ran southward on Amsterdam Avenue. Jacobs pursued and arrested Brown while Paoli chased and arrested the appellant. Paoli testified that immediately after arresting the appellant he asked him why he did it, but the appellant stood mute. The defendants were then taken to police headquarters where they were interrogated by a Detective Beckles. Beckles testified that after the defendants were brought to the station house by officers Jacobs and Paoli he interrogated both defendants separately. With regard to the appellant, Beckles stated:
*172 ‘ ‘ I asked Mm what was he doing up on Amsterdam Avenue. He said that he had come up with the defendant Brown. I said, how did you come up.
He said, ‘ In a car. ’
I said, ‘ Where is the car? ’
He said, that it was parked on the avenue. I said ‘ What did you do in the premises 1804 Amsterdam Avenue ? ’
He stated that he had gone in the premises with the defendant Brown, and I said, ‘ What did you do in there? ’
He said, ‘ I didn’t do anything.’
I said, ‘ Did you see Brown with a gun? ’
He said, ‘No, I did not.’
I said, ‘ Did you go in the man’s pockets ? ’
He said he did not. I said, ‘ Why did you run? ’
He said, ‘ because Brown ran,’ he ran also.”
As to codefendant Brown, Beckles stated: “ I asked him what he was doing up on Amsterdam Avenue. He .stated that he had driven up there in a car and he was going to visit a relative. I said what were you doing in the hallway of 1804. He stated that he and the defendant Baker—”
At this point the defense counsel objected and thereafter the court, complying with the law then in existence (Delli Paoli v. United States, 352 U. S. 232), instructed the jury: “ the court: Whatever the witness testifies with respect to Brown if you credit and believe it is binding only upon the defendant Brown and not Baker. Go ahead.”
Immediately thereafter Beckles testified: “ * * * the defendant Brown stated that he pointed a gun at the side of the complaining James Greenwood and that the other man, which is Baker, removed money from his pocket.” (Emphasis added.)
It is on the basis of this last quoted portion of Detective Beckles’ testimony that appellant asks for a new trial under the authority of Bruton v. United States (supra). Of course, Bruton having been held retroactive in Roberts v. Russell (392 U. S. 293) it is of no import that appellant’s trial took place prior to the Supreme Court’s decision in Bruton.
While it is true that Bruton stands for the proposition that admission at a joint trial of a defendant’s extrajudicial confes *173 sion implicating a codefendant violates the codefendant’s right of confrontation, thus requiring a new trial, we have not blindly applied Bruton. Bather, we have looked to the actual effect of the implicating confession on the complaining defendant in determining whether the rationale underlying Bruton is applicable or, even if applicable, whether, in light of all the other evidence in the case, the error should be characterized as harmless. In taking this approach, three situations have arisen when the admission of a defendant’s confession implicating a oodefendant has not necessitated the granting of a new trial.
In People v. Anthony and People v. Batten (24 N Y 2d 696) we held that where the confessing codefendant has taken the stand there exists no deprivation of the right to confrontation and, therefore, Bruton does not apply. We stated: “ It is clear, however, that Bruton was directed at extrajudicial statements not subject to cross-examination by the defendant who is implicated by them and the evil sought to be obviated by Bruton is not present where the codefendant who made the statements takes the stand and thereby provides the defendant with the opportunity to exercise his Sixth Amendment right to confrontation. Accordingly, we find no merit in Anthony’s Bruton claim.” (supra, at pp. 702-703; emphasis in original).
Of course, in the instant case Brown did not take the stand and, therefore, the Anthony exception is not in point.
In People v. McNeil (24 N Y 2d 550; see, also, People v. Galloway, 24 N Y 2d 935), we held that where the complaining defendant has himself confessed to the commission of the crime substantially to the same effect as his codefendant, Bruton is inapplicable. We stated, quoting from United States ex rel. Catanzaro v. Mancusi (404 F. 2d 296) that: “ ‘ Where the jury has heard not only a codefendant’s confession but the defendant’s own confession no such ‘ ‘ devastating ’ ’ risk attends the lack of confrontation as was thought to be involved in Bruton ’ ” (People v. McNeil, supra, at p. 553).
While it is true that in the instant case the appellant made certain admissions placing him with Brown on the day of the crime, he continually denied his guilt or any participation in the robbery. Therefore, the requirement of a confession by the *174 complaining defendant not being present herein, the McNeil exception cannot be applied.
Finally, in Harrington v. California (395 U. S. 250) and People v. Pelow (24 N Y 2d 161) it was held that, notwithstanding the existence of the codefendant’s implicating confession, the other evidence against the defendant was so overwhelming that the Bruton error must be characterized as harmless. While the People are correct in stating that absent Brown’s confession the other evidence against the appellant was .sufficient to find guilt beyond a reasonable doubt, such is not the test for harmless error. In Fahy v. Connecticut (375 U. S. 85, the case which the Supreme Court followed in Chapman v. California, 386 U. S. 18) the rule was stated as follows: “ We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.” (supra, at pp. 86-87).
In applying this test to the case at bar, it is our opinion that the error cannot be viewed as harmless.
Absent Brown’s confession, the evidence against the appellant was certainly less than overwhelming. The testimony of the complainant who had a prior record of six convictions was, of course, questionable and as to the evidence of appellant’s flight, ‘ ‘ This court has always recognized the ambiguity of evidence of flight and insisted that the jury be closely instructed as to its weakness as an indication of guilt of the crime charged., (Ryan v. People, 79 N. Y. 593; People v. Fiorentino, 197 N. Y. 560; People v. Leyra, 1 N Y 2d 199.) ” (People v. Yazum, 13 N Y 2d 302, 304.)
Accordingly, Brown not having taken the stand (People v. Anthony, supra), the appellant not having confessed himself (People v. McNeil, supra), coupled with our opinion that the violation of Bruton constituted ‘ ‘ harmful error”, it is concluded that the order of the Appellate Division should be reversed and a new trial ordered.[2]
*175 Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen, and Gibson concur.
Order reversed and the case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

. Of course, coram nobis is the proper remedy to raise an alleged Bruton error. As we stated in People v. Pohl (23 N Y 2d 290, 292): “ It is, therefore, our conclusion that in this case and, for the future, in all cases in which the normal appellate process has been exhausted or is no longer available * * * a defendant complaining of the prejudicial impact upon him of a codefendant’s out-of-court statements at a joint trial must seek relief by resort to a writ of error coram nobis.” (emphasis in original).

. Although defendant’s application for coram nobis relief was denied without a hearing, since no factual dispute exists as to the Bruton error, it is unnecessary, as we normally do in reversing a denial of coram nobis relief, to remand for a hearing.