■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL CAVANAUGH, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STANLEY SZYMCZAK, Appellant.—Appeals from judgments of the County Court of Albany County, rendered June 12, 1974, upon a verdict convicting defendants of the crime of unlawful imprisonment in the first degree. It is alleged that sometime after 10:00 P.M. on July 10, 1973, Susan Smalley, then 16, was walking along a street in Schenectady, New York enroute to meet her mother when she was suddenly accosted and forced into a waiting automobile by a man who was accompanied by three others. After driving around for a time, the vehicle was stopped and three of its passengers engaged in intercourse with the girl. The nonparticipant was then dropped off and the automobile stopped next at a drive-in restaurant around 3:00 A.M. where only two of its male occupants separately alighted to obtain food and returned. Finally, the group proceeded to the Bonnie Doone Motel in Albany County around 4:00 A.M., procured a room, and the same three men again engaged in sexual activity with the girl, leaving her at approximately 5:00 A.M. She departed from the motel some three hours later. Within two days the ensuing police investigation, in reliance upon her account and an interview with a young motel employee, developed a confrontation with one George Crandall. He supplied a sworn statement, in his own handwriting, which described the foregoing incident and named Michael Cavanaugh as one of the other participants. However, his statement denied having intercourse with the girl and claimed that she had masturbated him willingly. Shortly thereafter the police received a phone call, allegedly from Cavanaugh and one Stanley Szymczak. They separately acknowledged having been with Crandall and a young girl, yet Cavanaugh denied any criminal involvement, while Szymczak maintained that no one had forced her to do anything. Susan Smalley then identified George Crandall from a group of pictures containing his photograph as the man who had first approached her and became her principal tormentor, but she was unable to select pictures of Cavanaugh or Szymczak contained in separate sets of photographs. The suspects were arrested some five months later, after they were jointly indicted and charged with sexual abuse in the first degree, sodomy in the third degree and unlawful imprisonment in the first degree. A hearing was conducted on March 29, 1974 in response to defendants' motions to suppress the use of the foregoing evidence of identification and confession. They were denied on June 1, 1974. Before jury selection commenced three days later, counsel for Cavanaugh and Szymczak orally moved that separate trials be conducted for their respective clients. The trial court summarily denied these requests as untimely and without merit. The sexual abuse and sodomy charges against defendants Cavanaugh and Szymczak were dismissed at the close of the prosecution's case and the jury thereafter convicted them of unlawful imprisonment in the first degree. Crandall was found guilty of all charges except sodomy. Because the issues he raises are somewhat different, Crandall's appeal forms the basis of a

Separate decision *(People v Crandall,* 48 AD2d· 946). On these appeals from their judgments of conviction, Cavanaugh and Szymczak both claim that the trial court abused its discretion in refusing their requests for separate trials. We agree and reverse without specific reference to their other contentions, at least one of which also has merit for the reasons set forth in *People v Crandall (supra)* and would require the same result. We start with the well-settled proposition that a motion for a separate trial is addressed to the sound discretion of the trial court in the first instance, but that its determination is not final and is subject to a "retrospective" review of the record by an appellate court which may discover injustice or impairment of substantial rights "unseen at the beginning" (CPL 200.40, subd 1; *People v Payne,* 35 NY2d 22, 26; *People v Fisher,* 249 NY 419, 427). The motions in this case were timely made before trial as the statute then required (CPL 200.40, subd 1, eff Sept. 1, 1971). The timing of such motions is but one factor to be considered by the trial court and here it was a demonstrably insignificant one since the motions were promptly made at the first available opportunity following decision of the motions to suppress (cf. *People v Lowry,* 8 AD2d 956). Thus, the trial · court was constrained to consider the severance requests on the merits and in the light of the circumstances then known to exist. It was certainly aware that Crandall's statement was to be offered at the trial and that a certain redaction of his account would be required to adequately protect the interests of his codefendants. During trial, counsel consented to the manner and extent of that redaction. No objection on that score was voiced when Crandall's statement was offered in evidence and, consequently, that issue is not preserved for review. Nevertheless, that redaction was palpably incomplete for almost every remaining sentence contained some reference by which the jury was either directly informed, or could have easily inferred, that Crandall was accompanied by others throughout the incident. At the same time, to avoid this very intimation of associates, an exculpatory passage reading "As far as I know, none of the passengers molested her in the room" was deleted from the account. Crandall's statement so involved others in such an interrelated manner that fair and effective redaction was foreseeably impossible and was of a magnitude, sufficient of itself, to warrant separate trials (cf. *People v Baker,* 26 NY2d 169; *People v Jackson,* 22 NY2d 446; *People v La Belle,* 18 NY2d 405). In addition, the testimony given at the suppression hearing by the recipient of the phone call from Cavanaugh and Szymczak rendered it highly unlikely that the prosecution would be able to establish a sufficient foundation to support the admissibility of its contents as evidence at the trial. Therefore, the trial court should also have been aware that it was doubtful that any admissions, other than Crandall's, would be proffered. Although this was not to be, the officer who heard that conversation in fact did testify at the trial and made no mention of it. Finally, the trial court was also alerted to the possibility that, despite her in-court recognition of them at the suppression hearing, counsel for Cavanaugh and Szymczak would desire to pursue at trial the inability of Susan Smalley to photographically identify their clients and that this approach might be frustrating or antagonistic to Crandall's defense. These then were the obvious matters to be taken into account when the motions for separate trials were made and it was an abuse of discretion to deny them under these circumstances, particularly when no specific countervailing reasons to proceed with a joint trial appeared to offset these considerations. From our later examination, it now becomes plain that the central issue at the trial concerned the credibility of Susan Smalley; did the events she said occurred actually take place without her consent, and, if so,

were those who stood accused responsible for them? The prosecution presented witnesses whose testimony tended to corroborate both her initial apprehension and her appearance upon release, but none were able to substantiate the precise reason for either, supply information identifying any defendant, or confirm whether she had been molested during the period of alleged imprisonment. Crandall's sister-in-law also testified for the prosecution that she overheard Cavanaugh and Szymczak admit, in separate conversations after indictment, that they participated in picking up a girl and taking her to the Bonnie Doone Motel but that neither admitted to having touched her. Susan Smalley's testimony and Crandall's statement rounded out the prosecution's evidence. None of the defendants testified and only Crandall offered any proof. He produced a patron of a tavern near the restaurant where Susan Smalley claimed that a stop had been made and also an employee of that restaurant. Contrary to her testimony, they related, in substance, that four men were laughing and fooling around with a girl who resembled her, in size and description, outside an automobile and at the time she was supposedly entrapped. Crandall's wife also testified. On cross-examination, she named the defendants and another as having left in a car with her husband on the evening in question and stated that he returned home the following morning around 6:00 A.M., still in the company of his codefendants. Leaving aside the difficulty of effectively redacting Crandall's statement, its admission as evidence clearly heightened the risk that, despite contrary instructions, the jury would use it as a guide to find Cavanaugh and Szymczak guilty. We simply cannot say that the independent proof of their guilt was so substantial that we may safely ignore that possibility (cf. *People v Fisher,* 249 NY 419). Furthermore, at separate trials, Cavanaugh and Szymczak would undoubtedly have attacked Susan Smalley's inability to photographically recognize them shortly after this incident and would not have been associated with Crandall's witnesses who, though helpful to him on the questions of consent and restraint, were most damaging to their apparent position of challenging the sufficiency of the proof of their involvement in any criminal conduct. Against the presumed advantages favoring joint trials, these factors further demonstrate, albeit retrospectively, why it is said that a defendant's right to a separate trial is broader than his constitutional right of confrontation *(People v Payne,* 35 NY2d 22, 27). Judgments reversed, on the law, and as a matter of discretion in the interest of justice, and new trials ordered. Sweeney, J. P., Kane, Main, Larkin and Reynolds, JJ., concur.