■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS LOPEZ, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered January 3, 1974, convicting him of criminal possession of a dangerous drug in the third and fourth degrees (two counts each), upon a jury verdict, and imposing sentence. Judgment affirmed. We have previously affirmed the conviction of appellant's codefendant *(People v Delgado,* 51 AD2d 1106). The testimony of the People's witnesses tended to establish the following: After entering a building through a rear door, police officers Molinelli and Beltrani maintained a surveillance of the entrance to codefendant Delgado's first-floor apartment, from a concealed position. When they saw Delgado make a sale at his door to an unknown male of what proved to be heroin, Molinelli drew his gun and identified himself. The unknown purchaser dropped the glassine envelopes and fled from the building with Beltrani in pursuit. Molinelli retrieved the envelopes and entered Delgado's apartment foyer. Through the open bedroom door, he saw Delgado standing at the end of the room and appellant Lopez seated on the bed. In plain view on the bed were four plastic bags containing a white powder and seven tinfoil packets. On examination of the contents, both heroin and cocaine were found. Also in plain view on a dresser, there were

tablets of methadone, a scale, four measuring spoons and approximately 50 empty manila envelopes and, on an end table, were a large plastic bag containing marijuana and 13 empty glassine envelopes. A fully loaded semiautomatic rifle was visible in the corner behind the headboard of the bed. A search of the bedroom disclosed a loaded pistol underneath the bed, several tin-foil packets under the bedsheets and a box containing approximately 1,000 empty glassine envelopes in the end table drawer. There was no one else in the apartment except a child. At the precinct, Delgado admitted that there was an ounce of cocaine worth $750 in the apartment. The defense introduced two witnesses. Peter Gordon testified that he was the godfather of Delgado's son and had loaned someone about $1,000 for Delgado. On the afternoon in question, he was standing in front of the building. He saw Molinelli enter and bang on Delgado's door. Minutes later, he saw Beltrani enter the building and go into Delgado's apartment. No one ran out of the building after Molinelli entered. Desideria Santiago testified that on the same afternoon she was present in the apartment for 5 or 10 minutes before the police arrived. She was alone in the bedroom, lying on the bed watching television, and appellant and Delgado "were fixing up a room, nailing a—and lifting wood." There was a knock at the door, appellant went to answer it and the police officers entered together. There were no drugs or weapons in open view in the bedroom or anywhere else in the apartment. The police searched, found nothing and left empty-handed. In rebuttal, Molinelli and Beltrani identified Santiago as the woman who had appeared at the apartment after the defendants were arrested, and to whom they had entrusted the child and a wallet which had been found in the apartment containing almost $1,000, Delgado was indicted and charged with the sale of heroin. In a separate indictment, appellant and Delgado were jointly charged with four counts of drug possession and Delgado alone was charged with weapons possession. The District Attorney concedes that the weapons possession counts against Delgado alone were improperly joined in one indictment with the drug possession counts against both defendants (CPL 200.40, subd 1) and that the consolidation for trial of the two indictments was improper (CPL 200.20, subd 4; 200.40). Appellant did not object to the joinder of the counts against Delgado for weapons possession with the counts against both defendants for drug possession. He did object to the consolidation of the indictments and the joint trial. Appellant was not prejudiced by the joint trial. All of the offenses charged in both indictments stemmed from the same criminal transaction (CPL 40.10, subd 2). Evidence of the sale of heroin and of the presence of weapons in the bedroom would have been properly before the jury as a natural part of the narrative of events regardless of whether the indictments were consolidated for trial (see *People v Minor,* 49 AD2d 828, 829). Further, the Trial Judge informed the jurors that the defendants were being tried together "largely as a matter of convenience under certain rules and procedures" and instructed them to "examine the entire case separately [to determine] whether each one as an individual has been proved guilty beyond a reasonable doubt." Since one of the drugs was identified as cocaine by the police chemist, appellant was not prejudiced by Delgado's postarrest statement. Since appellant was not charged with weapons possession, no prejudice could result from the prosecutor's speculation during his summation that perhaps the defendants were "going for" the guns. The Trial Judge adequately communicated to the jurors that the statutory presumption of possession of drugs in open view in a private room (Penal Law, § 220.25, subd 2) is a permissive one and not one which they were required to draw. The language used was that specifically

suggested by the Court of Appeals in *People v Leyva* (38 NY2d 160, 167; see, also, *People v Jenkins,* 55 AD2d 657). The Judge's statement that there are "situations when it is not necessary for the People to prove knowing and unlawful possession", while unfortunate, is not grounds for reversal when one considers the charge as a whole under the facts of this case. The Judge charged twice on the presumption of innocence. He stated repeatedly that possession must be knowing and voluntary and that the People must prove appellant's guilt beyond a reasonable doubt. Appellant offered no evidence to rebut the presumption. The defense strategy was to discredit the police entirely. Gordon testified that he was outside of the apartment and that there was no sale. Santiago testified she was inside the apartment and there was no contraband in open view. Gordon's testimony is internally inconsistent as he admitted that the police did not carry a rifle into the apartment, but that they did carry one out. Further, his testimony contradicts Santiago's testimony that the police left empty-handed. On the whole record, the proof of appellant's guilt is overwhelming and there is no reasonable possibility that errors, if any, might have contributed to the conviction (see *People v Crimmins,* 36 NY2d 230; *People v Arthurs,* 24 NY2d 688, 695). Hopkins, J. P., Margett, Damiani and O'Connor, JJ., concur.