THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN RIVERA, Appellant.

First Department, June 20, 1978

APPEARANCES OF COUNSEL

*Julia Pamel Heit* for appellant.

*Charles H. Solomon* of counsel *(Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

## OPINION OF THE COURT

SANDLER, J.

The defendant appeals from two judgments of conviction following guilty pleas, the first rendered November 18, 1976 (G. ROBERTS, J.), convicting him of robbery in the first degree and the second rendered February 24, 1977 (HAFT, J.), convicting him of attempted sodomy in the first degree.

No reasons have been advanced on this appeal for vacating the conviction for attempted sodomy in the first degree and, accordingly, that judgment is affirmed.

As to the conviction for robbery in the first degree, reversal is sought on the ground that there existed a conflict of interest among the defendant and two codefendants that made it improper for them to have been jointly represented by one lawyer.

These are the relevant facts.

The defendant and two others were charged in a 15-count indictment with various crimes arising out of their alleged commission of a robbery. A time came when the three defendants retained a single attorney to represent each of them. On October 12, 1976, acting on behalf of the three defendants, their attorney moved to withdraw their previously entered pleas of not guilty and for permission to plead guilty to robbery in the first degree, the first count of the indictment, in satisfaction of the indictment.

In the proceedings that followed, the three defendants acknowledged their guilt. One defendant (Diaz) stated that he had a knife. Another defendant (Guzman) stated that one of them, not otherwise identified, possessed a loaded gun. And the defendant here appealing acknowledged that the robbery occurred at about 5 o'clock, involved a store in which dishes were sold, and that he himself had taken "necklaces, some necklaces, jewelry." The court informed the defendants that although the maximum sentence for the crime to which they entered a plea of guilty was 25 years, he would not impose a sentence of more than 12 years.

The defendants were sentenced on November 18, 1976. On that date their counsel requested an interpreter for all of the defendants, of interest here only because no such request had been made at the time the plea was taken. The attorney then reported a conversation with the defendant Diaz in which Diaz had asked him if he knew what the sentence would be, and the attorney had responded that he did not and that he had explained to them at the time of the plea that the maximum would be 12 years but that they might receive a shorter sentence. The court commented that each of the defendants had been arraigned "very carefully" with respect to the crime, and that it was not a basis for withdrawing a plea that a defendant "does not like the potential sentence."

Diaz then stated that he wished to withdraw his plea "on the grounds that my attorney has not given me proper legal representation which I think is necessary. He has not been to see me on Rikers Island and has only been present here in the courtroom and I don't think he knows about us."

"THE COURT: He doesn't know enough about your background?

"THE DEFENDANT DIAZ: About our case, yes, sir.

"THE COURT: You have plead [sic] guilty, on this case and you were arraigned, you spoke to him, he was in court on several occasions prior to the entry of this plea. I am denying your application as well. With respect to sentence, I'll hear from you and your attorney."

The interpreter stated that he (apparently Diaz), "says he did not plead guilty for the reasons he told us. He says he pleaded because he thought he was going to get reduced time." The court responded that they had been told when arraigned "that probation was not a sentence that could be imposed on this crime."

The attorney then made a general statement on behalf of the three defendants, in which he spoke of them as a group, and which includes no comment with regard to any of them as an individual.

The court sentenced this defendant and another to a term of not less that 3 years nor more than 9 years, and sentenced the third defendant (Guzman) to a term of not less that 4 nor more than 12 on the view that he "played a leading role, compared to your co-defendants you were the leader, a professional."

■ Turning to the issue presented, the principle is, of course, fundamental that a defendant in a criminal case is entitled to representation by an attorney whose loyalty to him is undivided and whose representation is in no way impaired or limited by any competing obligations to another. (See, e.g., *Glasser v United States,* 315 US 60, 70.)

The problem inherent in multiple representation of defendants in criminal cases has become a matter of increasing concern. (See, e.g., *United States v Mari,* 526 F2d 117, 119-121 [OAKES, J., concurring]; *United States v Carrigan,* 543 F2d 1053, 1058 [LUMBARD, J., concurring]; Geer, Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney, 62 Min L Rev 119.) The question was most recently addressed by the Court of Appeals in *People v Gomberg* (38 NY2d 307, 313-314) where the court concluded as follows: "What is required is that when two or more defendants are represented by the same attorney, the trial court ascertain, on the record, whether each defendant has an awareness of the potential risks involved in that course and has knowingly chosen it." The court went on to say (p 314): "Attorneys are under an ethical obligation to disclose to their clients, at the earliest possible time, any conflicting interests that might cloud their representation. Disclosure alone is not enough. The lawyer may not act for the client unless the client has given his informed consent to further representation. (Code of Professional Responsibility, EC 5-16, DR 5-101 [A], DR 5-105 [B], [C]; ABA Standards Relating to the Defense Function § 3.5 [a], [b].)"

The trial court here did not make the inquiry mandated in *Gomberg.* One result of that omission is a record barren of facts which would provide a basis for determining whether the interests of the defendants so diverged that a single attorney could not properly represent the three of them.

■ Accordingly, a hearing is necessary to determine whether the joint representation that occurred in this case was proper and whether it impaired the rights of this defendant to the effective assistance of counsel. (See *Salomon v La Vallee,* 575 F2d 1051.)

In light of the foregoing, the judgment of the Supreme Court, New York County (HAFT, J.), rendered February 24, 1977, should be affirmed; the appeal from the judgment of the Supreme Court, New York County (G. ROBERTS, J.) rendered

November 18, 1976, should be held in abeyance pending the completion of the hearing which is to be held forthwith and the decision of the hearing Judge on the issues raised.

LUPIANO, J. P., BIRNS, SILVERMAN and EVANS, JJ., concur.

Judgment, Supreme Court, New York County, rendered February 24, 1977, unanimously affirmed. Appeal from judgment of said court, rendered November 18, 1976, held in abeyance pending completion of the hearing to be held forthwith and the decision of the hearing Judge on the issues raised.