■   The People of the State of New York, Respondent, v Susan Hallett, Appellant.—Judgment affirmed. Memorandum: This case involves the shooting death of Robert Hallett, his second wife, Grace, and their younger daughter, Ann, in the basement of their home in the Town of Busti. The appellant, Susan Hallett, is the daughter of Robert Hallett by his first wife; codefendant Richard Parish was Susan's paramour. The defendants, along with Aaron Hale, were indicted by three separate indictments, one for each of the victims. Each indictment charged one count of intentional murder and one count of felony murder accusing the defendants of the crime of burglary as the underlying crime in the felony murder count. Hale's trial was severed. He then pleaded guilty to manslaughter, testified for the People, and was sentenced to probation. At the close of the trial the counts of intentional murder against appellant were dismissed. The jury

found Parish guilty of manslaughter in the first degree and appellant guilty "as charged". The critical issue presented on this appeal is whether the jury's verdicts convicting Parish of manslaughter and acquitting him of felony murder is repugnant to its verdict finding appellant guilty of felony murder. The jury acquitted Parish of felony murder by failing to render a verdict on that count (CPL 310.50, subd 3). The court charged the jury that extreme emotional disturbance is a· defense to intentional murder. The elements of first, second and third degree burglary were included in the charge on felony murder. Burglary was described as an "intent crime". The jury was instructed, albeit erroneously (see *People v Patterson,* 39 NY2d 288, affd 432 US 197; and see *People v Edwards,* 64 AD2d 201), "that if you find that it has been proven by the People, beyond a reasonable doubt that he killed these people deliberately, but it has been established to your satisfaction, by a fair preponderance of the believable testimony, that his mind was so beclouded by dope, or intoxicant, that he was unable to form an intent to kill, your verdict must be 'manslaughter in the first degree' ". Further, they were instructed that if the prosecution failed to prove that Parish intentionally participated in the burglary they must render a verdict of "not guilty of the felony murder count". Applying these instructions by the court, which we consider to be the law of the case *(People v Gibson,* 65 AD2d 235), the jury could have found that Parish lacked the requisite intent to commit the underlying felony of burglary. A person is guilty of felony murder, *inter alia,* when acting alone or with another he commits burglary during which he, "or another participant", causes the death of a person (Penal Law, § 125.25, subd 3). The jury's acquittal of Parish of felony murder does not imply that the jury also found that he was not a "participant" in the burglary so as to render repugnant its verdict convicting appellant of felony murder. Implicit in the verdicts is the finding that both defendants were present in the house at the time of the burglary and that Parish committed the homicides. Under the instructions of the court the jury was obliged to consider the "extreme emotional disturbance" defense, and it is apparent that the jury conceivably related this defense to Parish's ability to form an intent to commit the underlying felony. Failure on the part of Parish to form an intent to commit burglary does not remove this crime as the basis for appellant's conviction for felony murder. She would nonetheless be guilty of felony murder if the other "participant" with her, who actually committed a homicide during a burglary, was a *non-suijuris* infant or a mentally defective person incapable of forming an intent (see *People v Porter,* 54 NYS2d 3). A further analogy may be drawn to the provisions of subdivision 1 of section 20.05 of the Penal Law which provides that accessorial liability may not be avoided based upon the lack of the requisite mental state required for the commission of the offense on the part of the other person engaged in the criminal conduct. Parish's inability to form the specific intent to commit the burglary is irrelevant to the issue of appellant's guilt. The "difference between these seemingly inconsistent verdicts can be reconciled by a 'rational theory' " *(People v Gibson, supra,* p 239). Appellant's pretrial motions to dismiss the indictment based on the insufficiency of the Grand Jury minutes and for a severance were denied.' The validity of an order denying the insufficiency motion is not reviewable upon an appeal from an ensuing judgment of conviction based on legally sufficient evidence (CPL 210.30, subd 6). Appellant argues that the failure to dismiss the first count of the indictment charging her with intentional murder (Penal Law, § 125.25, subd 1) until the conclusion of the trial resulted in reversible error because a joint trial would not have occurred

had the defendants not been jointly charged with every offense alleged in the single indictment (CPL 200.40, subd 1). However, appellant was not prejudiced by the assertion of the additional count of intentional murder solely against her codefendant. The same "transaction" was involved and evidence of both offenses "would have been properly before the jury as a natural part of the narrative of events" (People v Lopez, 59 AD2d 767, 768). The failure to dismiss the first count of the indictment does not warrant the retrospective review of the denial of the motion for severance under these circumstances (cf. People v La Belle, 18 NY2d 405, 409; People v Cavanaugh, 48 AD2d 949, 950). Finally, we have carefully examined the record with respect to the contention that a conflict of interest exists by reason of the Public Defender's representation of the appellant and Aaron Hale. We find that the trial court carefully explained the conflict in the presence of appellant and Hale with their counsel present following which, we find, that appellant made a knowing and intelligent waiver (cf. People v Macerola, 47 NY2d 257). Other issues raised on this appeal have been examined and found to be without merit. All concur, except Schnepp, J., who dissents and votes to reserve decision and remit the matter for a hearing in accordance with the following memorandum.

Schnepp, J. (dissenting). I must disagree with the majority's finding that appellant made a knowing and intelligent waiver. Appellant in her personal affidavit claims that she was deprived of her constitutional right to the effective assistance of counsel and a fair trial because of a conflict of interest resulting from the joint representation by the Public Defender of Chautauqua County of both appellant and codefendant, Aaron Hale. On February 19, 1973 Hale was interviewed by Assistant Public Defender Bruce K. Carpenter and on February 20, 1973 the court assigned William C. Arrison, Public Defender of the County of Chautauqua, as Hale's counsel. On February 21, 1973 Mr. Carpenter represented Hale at his arraignment. The court advised that this specific Public Defender assignment was made to Carpenter to be handled separate from Public Defender matters and instructed him to "keep such matters as they come to your attention * * * as if they were, say, located out of the Woodin and Carpenter office [Carpenter's private law office]". Mr. Carpenter's interoffice memorandum of February 19, 1973 stated that there would be a substantial conflict of interest for the Public Defender's office if it represented codefendant Hallett or Parish. At their arraignment on March 16, 1973 both appellant and Parish requested the court to appoint an attorney. The court indicated that it had instructed Mr. Carpenter not to treat the Hale assignment as a Public Defender matter, but to handle it from the office of Woodin and Carpenter "so that there could be no conflict of interest making the Public Defender available for assignment" to appellant or Parish. After both indicated that they wanted the same attorney, he tentatively assigned the Public Defender and directed him to interview these defendants and to report to the court as to any possible conflict of interest. On March 19, 1973 Mr. Carpenter appeared for Hale and Mr. Arrison for appellant. Mr. Arrison stated that the Public Defender's office must be considered as one office, analogous to a private law firm, with the entire staff responsible to him. Mr. Arrison further advised the court that he had no personal factual conflict of interest and that he had discussed with appellant and Parish the ethical considerations involved in representing multiple defendants. Appellant consented to the appointment of Arrison after he had explained in open court the reasons for the necessity of a consent. The court then assigned Mr. Arrison to represent appellant and separate counsel to represent Parish. Hale

refused to consent to the assignment of the Public Defender to. represent appellant. The court then relieved Mr. Carpenter of his assignment to Hale and reassigned Woodin and Carpenter. Mr. Carpenter, who was reluctant to have Hale deprived of the use of the investigative staff and facilities of the Public Defender's office, pointed out during his court appearance the presence of a conflict of interest resulting from the Public Defender's representation of Hale. Hale testified at the trial that Mr. Carpenter had represented him since February, 1973 and that he had kept him aware of the court and trial proceedings. Mr. Carpenter was called as a witness for the People and testified that he was an Assistant Public Defender of Chautauqua County, that he represented Hale, first in his capacity as Public Defender and later as a private attorney. Further, he stated that in exchange for the information provided by Hale the charges against him were to be reduced to first degree manslaughter and Hale was to receive a sentence of probation. Chautauqua County Public Defender, Richard V. Slater, representing appellant on this appeal has filed a reply brief in which he contends that a conflict of interest is not avoided by assigning separate attorneys in a Public Defender's office to represent codefendants with conflicting interests. He points out that appellant was prejudiced in the eyes of the jury because they observed that she and the principal witness against her were represented by the same office. It is interesting to note that on two occasions Mr. Carpenter moved this court for permission to file an *amicus curiae* brief concerning the conflict of interest issue and submitted appellant's affidavit which is now before the court. An obvious conflict between the interest of appellant and Hale exists. Representation of both by the Public Defender's office is analogous to representation of both by a single attorney or by a law firm *(People v Wilkins,* 28 NY2d 53). "Joint representation of codefendants may be permissible where there has been a knowing and intelligent waiver [citation omitted], or where no prejudice is shown" *(People v Dell,* 60 AD2d 18, 21). The existence of a conflict of interest issue was perceived by the court, counsel, appellant and Hale. When Hale refused to consent to the Public Defender's appointment as appellant's attorney, the court relieved Assistant Public Defender Carpenter as his attorney and reassigned the law firm of Woodin and Carpenter to represent Hale. This did not completely eliminate the possibility of conflicting obligations. The trial court has an important obligation to a defendant in these circumstances. "Defendants, * * * often unschooled in the nature of criminal proceedings, may not always sense when a conflict of interest does exist or perceive how such conflict may run counter to the effectiveness of his attorney's representation. Thus, before the formal commencement of trial, it is the responsibility of the Trial Judge, independent of the attorney's obligation to inform his clients of any conflicting interests which may hinder his representation, to 'ascertain, on the record, whether each defendant [represented by the same attorney] has an awareness of the potential risks involved in that course and has knowingly chosen it.' *(People v Gomberg,* 38 NY2d 307, at pp 313-314)" *(People v Macerola,* 47 NY2d 257, 263). The Trial Judge's inquiry of appellant as to her understanding of the conflict and his willingness to assign another attorney evidences his recognition of his obligation to apprise her of her right to effective assistance of counsel. It is apparent that it attached great weight to Mr. Arrison's assurances, as it had the right to do *(People v Gomberg, supra,* p 314), that the conflict question had been fully discussed with appellant. On March 26, 1973 appellant declined the court's offer to assign private counsel and stated that she understood the technical considerations relative to one attorney representing multiple defendants

and the possibility of a conflict of interest. She reiterated her full confidence in Mr. Arrison. However, the trial court did not explore the scope of her knowledge of the nature and consequences of her decision. It did not sufficiently admonish the appellant of "the potential pitfalls of joint representation" *(People v Macerola, supra, p 263).* In her affidavit to this court appellant swears that her mental state was such that at the time of her arraignment she was willing to agree to any suggestions offered to her. She further states that while she was aware that conflict of interest questions were raised she was not advised of the dangers or the possible consequences to her. She swore that most of the discussions outside of the courtroom with her lawyer concerned the conflict between appellant and Parish and not the conflict between appellant and Hale. Based on the record before this court, I cannot fully determine that a knowing and voluntary choice was in fact made by appellant. Accordingly, I would remit the matter to County Court to take evidence on whether appellant was aware of the potential risks involved and knowingly chose to be represented by Public Defender Arrison despite those risks *(People v Rivera,* 62 AD2d 767). (Appeal from judgment of Chautauqua County Court—murder.) Present—Cardamone, J. P., Simons, Schnepp, Callahan and Doerr, JJ.