[640 NYS2d 895]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant,
v MATTHEW ADESSA, Appellant-Respondent.

Second Department, April 8, 1996

APPEARANCES OF COUNSEL

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens *(Steven J. Chananie, John M. Castellano* and *Alexander H. Gardner* of counsel), for appellant-respondent.

*Nicolosi & Sciacca,* Bayside *(Vincent F. Nicolosi* of counsel), for respondent-appellant.

### OPINION OF THE COURT

ROSENBLATT, J. P.

The case before us raises important considerations as to the role and the discretion of the District Attorney in presenting cases to the Grand Jury. The People are appealing from the court's order dismissing the indictment against the defendant *(see,* CPL 450.20 [1]).

The Supreme Court dismissed the indictment based on its view that the prosecution prejudiced the defendant's rights by presenting to the same Grand Jury the complaint against the defendant as well as the complaint by the defendant against the arresting officer. The defendant was indicted for reckless endangerment in the first degree (two counts), reckless endangerment in the second degree (two counts), menacing in the second degree, criminal possession of a weapon in the fourth degree, and leaving the scene of an accident without reporting.

In its decision, the court aptly summarized the evidence before the Grand Jury and determined that it established the following: On October 2, 1993, shortly before 5:00 A.M., the defendant, driving his car, sped out of a service station in Queens. He hit another vehicle and almost ran down the service station guard, who was trying to take down the defendant's license plate number. Police Officers Litrenta and Frammosa, in plain clothes in an undercover taxi, saw the event, and pursued the defendant, since they "believed that it was a possible robbery". The defendant led the police on a high-speed chase, through streets and red lights, during which the police officers flashed the rotating red light on their car. When the defendant finally

stopped, the police approached with their shields around their necks and verbally identified themselves to the defendant as police officers. The defendant then backed up his car toward the police, and again drove off at a high speed. The chase continued until the defendant stopped again, got out of his car, and despite another police identification and warning, came toward the police officers with a baseball bat. Officer Litrenta fired three shots, striking the defendant in the leg and buttocks. The defendant ran back to his car and sped off. A short time later the police arrested the defendant at Deepdale Community Hospital. They recovered the bat at the scene.

By letter dated October 20, 1993, the defendant's attorney wrote to a Queens County Assistant District Attorney stating that he would be forwarding a letter to the New York City Police Commissioner (hereinafter the Commissioner) and to the District Attorney requesting an investigation of the police officer's conduct in the shooting. He added that, "In view of the foregoing and the possibility that there might be a conflict since my client is a named defendant and your office might conduct an investigation into the police officer's conduct, I have decided not to have Mr. Adessa testify before the Grand Jury". By letter dated October 22, 1993, the defendant's attorney wrote to the Commissioner asserting police misconduct and asking for an investigation.[1]

By letter dated October 26, 1993, the defendant's attorney wrote to the District Attorney seeking an investigation relative to the shooting, stating that "[i]f for some reason you feel that a conflict might exist in as much as Mr. Adessa is a defendant in a pending matter, I would respectfully request that your office seek judicial intervention".

On November 10, 1993, the prosecutor brought the case before the Grand Jury as a "dual slip presentment", the first slip being the People against Matthew Adessa, the second slip being an investigation into the shooting of Matthew Adessa by Officer Litrenta.

On February 2, 1994, the Grand Jury voted an indictment against the defendant, and no true bill with relation to the police officer.

---

1. An investigation has apparently been undertaken. The record does not reveal its status or result.

In moving to dismiss,[2] the defendant alleged, among other things, that he was under the impression that he would be indicted separately, that he requested an investigation of the police officer, and that as a result of this belief, uncorrected by the District Attorney, he elected not to appear before the Grand Jury. The court, however, concluded that there is no statutory basis that affords a *complainant* the right to either notice or an appearance before a Grand Jury, and that there was no prosecutorial abuse in its failure to advise the defendant as to whether and when the Grand Jury would hear the case against the police officer. We note that as for his appearance before the Grand Jury as a defendant, he declined that unqualifiedly, in writing.

The court, however, dismissed the indictment based on the defendant's other argument, notably, that there was not one incident, as alleged by the People, but two, so that the presentation of the entire matter to the same Grand Jury foreclosed independent Grand Jury review, thus unfairly "bolstering" the People's case against the defendant. The court gave the prosecution leave to re-present the case to another Grand Jury.

In concluding that the indictment was the product of a prejudicial presentation, the court accepted the defendant's argument that the episode at the gas station was discrete from the ensuing chase. Based on that formulation the defendant argued, and the court agreed, that "there would be a natural tendency for [the Grand Jury] to consider the matter as one incident with one party guilty or the other", and that, in essence, the grand jurors would favor the police officer, to the defendant's prejudice, so that after hearing both sides they might have "felt a spilling over of sympathy for any alleged wrongdoing by the officer". The court then articulated its holding: "the presentment of a citizen's alleged crimes, joined to an investigation of a police officer's alleged excesses of duty, is

---

2. Initially, the defendant moved for dismissal based on insufficiency of evidence, as well as for other omnibus motion relief. He later expanded his motion to include the present grounds, as well as an application for a special prosecutor and a contempt adjudication against the prosecution for its failure to timely obey the court's order to turn over police personnel records. While we disapprove of the lateness of the prosecutor in seeking a stay of the court's order, it does not relate to the dismissal of the indictment. In its decision and order appealed from the court stated that both the application for a special prosecutor, and the motion for a contempt order were moot. The defendant conceded on oral argument that an appeal from the contempt decision was moot, and in any event, we note that no appeal by the defendant lies from either determination (*see,* CPL 450.10).

prejudicial in that it denies the defendant a fair and impartial Grand Jury".

We are reversing the order of dismissal because we do not agree with the rule that the court established. No case or statute has been brought to our attention establishing such a rule. Research has not disclosed any, and we do not think that this case calls for it.

To begin with, the events are closely intertwined. The testimony of Officer Frammosa was instrumental in establishing the events at the gas station (leaving the scene; reckless endangerment), as well as the high-speed chase and its aftermath (reckless endangerment, menacing, weapon possession). There is no doubt that the charges are joinable, and there is no argument to the contrary. They obviously formed a continuous event even though the location changed (rapidly).

The prosecutor has discretion in deciding whether to present a case to a Grand Jury and how to do it *(People v Lancaster,* 69 NY2d 20, 25, *cert denied* 480 US 922; *see also, People v Mitchell,* 82 NY2d 509, 515; *People v Di Falco,* 44 NY2d 482, 486-487). That discretion is coordinate with the wide latitude that Grand Juries have been given in their investigative and accusatory powers, a latitude long recognized in State and Federal courts *(People v Stepteau,* 81 NY2d 799; *see also,* Note, *The Grand Jury as an Investigatory Body,* 74 Harv L Rev 590 [1961]). As often as we cite these principles, they are almost always accompanied by a corollary, that the discretion and power of the Grand Jury and the prosecution are not unchecked. It has long been subject to the inherent supervisory role of the court in preventing and correcting abuses *(People v Glen,* 173 NY 395; *see generally,* 2 Beale & Bryson, Grand Jury Law & Practice § 10:18 *et seq.).* In that role the courts have not hesitated to dismiss indictments when warranted, as for example, when there is overreaching or a lack of fair dealing in the Grand Jury *(People v Pelchat,* 62 NY2d 97; *see,* Gershman, *Supervisory Power of the New York Courts,* 14 Pace L Rev 41, 77-91 [1994]). We do not see that this case presents any such prospect, nor do we think it wise to impose a two-Grand Jury rule for cases of this kind.

The prosecution contends not only that there is no impropriety in a single Grand Jury hearing such cases but that a single Grand Jury is better, in that the process is more orderly when one tribunal evaluates the proof. Further, according to the prosecution, it eliminates the possibility of conflicting or inconsistent findings, and the needless delays and impanelments in

some regions of the State where Grand Juries do not continuously sit.

In all, we are not prepared to say, as a matter of law or policy, that the investigative-accusatory process in dealing with cross complaints is better determined by two Grand Juries rather than one. Cross complaints are routinely addressed by a single Grand Jury, and we see no reason to impose a rule by which police-citizen cases must be treated differently.

In conclusion, we find no basis to conclude on the facts, let alone as a matter of law, that the integrity of the Grand Jury proceeding was impaired to the defendant's possible prejudice. Moreover, the defendant has no right to appeal or cross-appeal from the order dated November 9, 1994 (see, CPL 450.10, 450.15). Accordingly, the cross appeal is dismissed, on the law, the order is reversed, insofar as appealed from, and the indictment is reinstated.

HART, KRAUSMAN and GOLDSTEIN, JJ., concur.

Ordered that the cross appeal is dismissed; and it is further,

Ordered that the order is reversed, insofar as appealed from, on the law, and the indictment is reinstated.