89 N.Y.2d 677 (1997)
680 N.E.2d 134
657 N.Y.S.2d 863
The People of the State of New York, Respondent,
v.
Matthew Adessa, Appellant.
Court of Appeals of the State of New York.
Argued February 4, 1997
Decided March 27, 1997.
Nicolosi & Sciacca, Bayside (Vincent F. Nicolosi and Matthew J. Larkin of counsel), for appellant.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (Alexander H. Gardner and John M. Castellano of counsel), for respondent.
James M. Catterson, Jr., District Attorney of Suffolk County, Riverhead (Glenn Green of counsel), and Francis D. Phillips, II, District Attorney of Orange County, Goshen, for New York State District Attorneys Association, amicus curiae.
Chief Judge KAYE and Judges LEVINE and WESLEY concur with Judge TITONE; Judge BELLACOSA dissents and votes to reverse in a separate opinion in which Judges SMITH and CIPARICK concur.
*679 TITONE, J.
The issue in this appeal is whether it is inherently prejudicial to obtain an indictment against a civilian defendant from a Grand Jury that has also been asked to consider a police misconduct charge arising out of the same incident. On this appeal, defendant contends that such a presentment procedure so impairs the integrity of the Grand Jury proceeding as to taint the indictment. Finding no concrete prejudice resulting from the "dual slip" presentment in this case, we conclude that the indictment against defendant was properly upheld.
According to the evidence presented to the Grand Jury as described in the opinions below, defendant entered a Queens gas station at about 4:50 A.M. on the morning of October 2, 1993. Having been asked to pay in advance for his gas, defendant reentered his vehicle and sped away. In the process, he allegedly hit another car that was parked at the gas station and nearly struck a security guard who was attempting to record his license plate number.
Two police officers in an unmarked vehicle observed defendant's hasty departure from the gas station. Believing that a robbery may have occurred, they chased defendant through several traffic lights, flashing their headlights and using an attachable rotating red light. When defendant's vehicle finally came to a stop, the officers exited their car and identified themselves. At that point, the officers saw the back-up lights on defendant's vehicle flash on and, fearful that defendant was about to back into them, the officers returned to their car. Defendant sped off again and the chase resumed, terminating only when defendant brought his vehicle to a stop in the right-hand lane of the Long Island Expressway.
*680 Defendant alit from his car with a baseball bat in his hand and moved in the officers' direction. The officers again identified themselves as police and ordered defendant to drop the bat. Rather than doing so, however, defendant continued to move toward them. One of the officers fired his weapon at defendant, striking him in the legs and buttocks. Defendant ran back to his car and sped away. He was subsequently arrested at Deepdale Hospital, where he had driven for treatment immediately after the shooting.
Approximately three weeks after the arrest, defendant's attorney advised the District Attorney's office that he planned to request an administrative and criminal investigation into possible misconduct by the officer who had fired at defendant. Noting the prospect of a conflict arising from the existence of defendant's cross complaint, defense counsel further advised the District Attorney that his client would not testify before the Grand Jury with respect to the charges leveled against him.
On November 10, 1993, the matter was presented to a Grand Jury as a "dual slip" presentment, the first "slip" involving "the People against Matthew Adessa" and the second involving "an investigation into the shooting of Matthew Adessa." The only witnesses to testify were the gas station attendant, the shooting officer's partner and a third officer who had been sent to the hospital to place defendant under arrest. Neither defendant nor the shooting officer testified before the Grand Jury.
On February 2, 1994, the Grand Jury voted to indict defendant on two counts of first degree reckless endangerment, two counts of second degree reckless endangerment, one count of second degree menacing, one count of fourth degree criminal possession of a weapon and one count of leaving the scene of an accident. The menacing and weapon counts arose out of defendant's alleged use of a baseball bat and the remainder of the charges arose out of his vehicular activities. Several charges were also submitted against the shooting officer, but the Grand Jury declined to indict.[1]
*681 On April 27th, defense counsel moved to dismiss the indictment against defendant in motion papers that detailed defendant's claim of police misconduct. Defense counsel's affirmation alleged, among other things, that defendant had been unaware that the unmarked vehicle chasing him contained police officers. He had brandished the baseball bat at the vehicle's occupants, who had never identified themselves as police officers, because he feared for his own safety. Defense counsel also alleged that defendant had already turned around to flee when the officer fired his third shot. In further support of his claim that the police had acted improperly, counsel noted that the officers had not attempted to apprehend the injured defendant after he reentered his car and fled the scene of the shooting.
Several months later defense counsel filed a supplementary motion for dismissal, asserting that he had just learned that both the case against his client and the "investigation" into the police officers' conduct had been presented to the same Grand Jury. Counsel argued that the Grand Jury proceeding was "tainted" because defendant, the only person with evidence to give against the officers, was "never given an opportunity to appear" or to give testimony in the proceeding. Counsel further argued that the Grand Jury could not have impartially considered the evidence against defendant when it "had already found credible" the testimony of the People's police officer-witness.
The Supreme Court granted defendant's motion and dismissed the indictment. The court noted that the District Attorney could not be faulted for failing to notify defendant of the presentment against the officers or for depriving him of an opportunity to testify against them, since, unlike a target, a complainant has no statutory or common-law right to appear before a Grand Jury and the People enjoy broad discretion in determining how to conduct their case. Nonetheless, the court concluded that the People had breached their obligation of fairness by taking advantage of a "spilling over of sympathy" *682 by the grand jurors for the officers, prejudicing defendant's right to an unbiased Grand Jury hearing.
On the People's appeal, however, the Appellate Division reversed and reinstated the indictment. While it recognized that the People's discretion with regard to Grand Jury presentations is not without limits, the Court found no reason in law or policy to hold that two separate Grand Juries are required when there are cross accusations by police officers and citizens. Additionally, on the facts before it, the Appellate Division concluded that there was no basis for a finding that "the Grand Jury proceeding was impaired to the defendant's possible prejudice." (218 AD2d 415, 420.) Defendant has appealed by permission of a Judge of this Court.
It is beyond dispute that the Grand Jury has the dual role of investigating crimes and protecting citizens from unfounded prosecutions and governmental overreaching (People v Lancaster, 69 N.Y.2d 20, 25; People v Calbud, Inc., 49 N.Y.2d 389, 396). It is also beyond dispute that improper influences and exposure to bias can so undermine the Grand Jury's integrity as to require dismissal of the resulting indictment (see, People v Huston, 88 N.Y.2d 400; CPL 210.20 [1] [c]; 210.35 [5]). The issue presented here does not concern the vitality of these principles, but rather concerns the nature and extent of particularized prejudice, if any, that this defendant suffered by virtue of the "dual slip" procedure that was followed in his case. Absent a breach of a statutory command or some indication of likely prejudice, there is no legal basis for interfering with the prosecutor's prerogatives in determining the manner in which a Grand Jury presentment is made.
We begin our analysis with defendant's own claims of prejudice. In an argument that met with success in the Supreme Court, defendant contends that the joint presentment of citizen-police officer cross complaints is "inherently prejudicial" because the "societal respect and admiration police officers enjoy" could induce the grand jurors to give undue credence to the police-generated evidence against the civilian target. The argument, however, does not withstand scrutiny, since it rests on a speculative assumption that is neither self-evidently valid nor pragmatically viable in our system of criminal justice. That rationale is clearly not acceptable.
First, because the enforcement of the criminal laws is entrusted to police officers, the conduct and testimony of police officers figure prominently in virtually every aspect of criminal *683 proceedings. Further, because the police-witnesses' version of events is frequently challenged, the probity and veracity of police officers must often be assessed in the face of conflicting versions offered by civilian-witnesses, including the accused. Thus, to adopt the assumption that police testimony enjoys an unwarranted advantage in credibility disputes would be to cast doubt on the fairness of nearly every proceeding in which the truth of such testimony is disputed. Second, in this age of spontaneous videotaping of arrests and widespread news coverage of police brutality claims, it seems doubtful that many grand jurors asked to resolve a credibility dispute between an officer and a civilian would necessarily be strongly inclined to decide it in the police officer's favor simply because of his or her position in the law enforcement establishment.
Finally, even assuming the correctness of defendant's assumption that grand jurors are generally biased in favor of police officers, it is difficult to see how that assumption supports his present objection to the use of a single Grand Jury to evaluate both the case against him and the claim against the officers. If the prosecutor had followed the course defendant advocates and presented the cases to separate Grand Juries, the evidence against defendant would still have consisted primarily of police officer testimony and the ostensible problem of bias in favor of such testimony would still exist. Indeed, in this respect, the "dual slip" presentment could just as easily have had a salutary rather than a prejudicial effect, since it at least made the grand jurors aware that the testifying police officer's partner had been accused of misconduct in connection with the incident and, accordingly, gave some basis for questioning the testifying officer's candor and veracity.
The same analytical problem exists with respect to defendant's second point, which emphasizes the purported unfairness of a procedure which in his case ensured that the civilian-complainant  the only individual likely to support the claim of police misconduct  would not appear. Initially, as defendant concedes, there is no rule of law requiring the District Attorney to call the complainant or any other witness to testify before the Grand Jury. Further, neither a complainant nor a target has a right to be informed of the manner in which a Grand Jury presentment will be made (see generally, People v Stepteau, 81 N.Y.2d 799). The only right defendant had in this regard was the right conferred by CPL 190.50 (5) (a) to testify on his own behalf. However, for strategic reasons, defendant chose not to exercise that right.
*684 Even if separate Grand Juries had been used, defendant's police misconduct claim could not have been introduced into the Grand Jury proceeding against him unless he decided to waive immunity and assert his target's right to testify under CPL 190.50 (5) (a). As the record makes clear, defendant, the only witness with evidence to give against the police officer, elected not to follow that course. Significantly, he made that decision at a time when he believed that the Grand Jury presentment pertained only to the charges against him. Thus, it was not the District Attorney's decision to proceed with a "dual slip" presentment that prejudiced defendant's ability to place his version of events before the Grand Jury, but rather his own decision to forgo his right to testify (see, People v Lancaster, 69 N.Y.2d 20, 25-26, cert denied 480 US 922, supra).
To be sure, had he known of the simultaneous presentment of the charges against the police officer, defendant would have been faced with the tactically difficult choice of waiving his own immunity or forgoing the opportunity to give evidence against the police officer. Under that scenario, defendant's interests as a citizen-complainant would unquestionably have been impaired. That circumstance, however, would not change the analysis here, since the only question before us is whether defendant's interests as a Grand Jury target were so prejudiced as to vitiate the integrity of the indictment that was issued against him.
We stress that our holding in this case should not be construed as a blanket approval of the practice of submitting criminal charges against citizens and cross complaints against police officers to the same Grand Juries. We recognize that there may be situations in which such a practice could undermine the fairness of the proceeding and lead to palpable prejudice for the accused. We also are concerned about the potential for injury to the public interest that arises when the People fail to zealously pursue a bona fide accusation of police misconduct because of their fear that a criminal case against a civilian will be compromised. The latter concern, however, is a policy consideration that cannot sensibly be remedied by the dismissal of an otherwise valid indictment.
The dissent's argument, which advocates deference to the trial court's "particularized assessment" of the record before it, is flawed for several reasons. First, the argument proceeds from the erroneous assumption that the inquiry here concerns factual and discretionary issues and implicates the trial courts' supervisory function. However, the question whether a particular *685 presentment was so improper as to impair the integrity of the Grand Jury proceeding and to create the potential for prejudice has always been treated as a question of law. Indeed, all of our recent rulings under CPL 210.35 (5) analyze the question as one of law, and there is no hint in any of our writings of deference to the lower courts' fact findings, discretionary choices or supervisory prerogatives (see, e.g., People v Huston, 88 N.Y.2d 400, supra; People v Sayavong, 83 N.Y.2d 702; People v Caracciola, 78 N.Y.2d 1021). That the analysis requires consideration of all of the surrounding circumstances (dissenting opn, at 688, citing People v Huston, supra, at 409; People v Sayavong, supra, at 709) does not convert the inquiry from a legal one to a mixed question of law and fact or a discretionary matter warranting appellate restraint. Traditional "harmless error" analysis unquestionably entails an evaluation of the evidence and other relevant circumstances (see, People v Schaeffer, 56 N.Y.2d 448), yet this Court has squarely rejected the suggestion that the question should be treated as a "mixed" one (People v Reddick, 65 N.Y.2d 835).
The dissent's call for deference to the trial court is particularly puzzling because the inquiry here involves only a review of transcripts and affidavits  a task that affords Trial Judges no special advantage over Judges at the appellate level. Indeed, despite the dissent's assertion that trial courts have a "special" role in reviewing Grand Jury proceedings and even have special powers "to search the record and examine the more general claims an accused attempts to assert" (dissenting opn, at 690) and despite its suggestion that only the trial court had access to "the whole of the known, official record of [the] proceedings" (id., at 691), nowhere does the dissent identify how the inquiry at the trial court level differs from the appellate inquiry or how the record before the trial court differs in any respect from the record that is currently before us on this appeal.
Moreover, even if deference to the trial court were appropriate in the abstract in cases involving CPL 210.35 (5), it makes little sense to accord such deference here, where the trial court's conclusion, which rested on a perceived "spilling over of sympathy" for the police by the grand jurors, is one that even the dissent would not adopt. It is, indeed, ironic that the dissent urges us to embrace the trial court's holding because of its somehow more "appropriate" "fact-specific" inquiry and more "probing scrutiny" (id., at 690, 689), but at the same time judiciously steers clear of the trial court's actual analysis and rationale.
*686 Finally, although CPL 210.35 (5) does not require a showing of actual prejudice, there must be an articulable "likelihood of" or at least "potential for" prejudice (see, People v Huston, supra, at 409). It simply does not suffice to refer to "nuanced guideposts" or "factual evolvement[s]"; some specific theory of prejudice must be identified in order to justify a dismissal under the statute. The only concrete problems that the dissent cites are that the Grand Jury "was not afforded [a] full and fair opportunity to evaluate the entire criminal activity" and that the "defendant's right, opportunity and decision concerning the presentment of his side of the case and story were prejudicially compromised." Whether defendant's rights were "prejudicially" and wrongfully compromised, however, is precisely the question placed before us on this appeal. The dissent's assertion of prejudice only begs that question and certainly does not serve to answer the critical question of how the "dual slip" procedure that the prosecution used here might have prejudiced the accused. Even more to the point, the "faults" that the dissent identifies were not the result of the "dual slip" procedure at all, but rather were a natural consequence of the fact that, apart from the accused police officer and his partner, defendant was the only person who could have shed light on the encounter, and he chose not to testify.[2] Significantly, neither the dissent nor the appealing defendant has posited an alternative procedure that would have been less "prejudicial" or, more specifically, would have enabled defendant to place his side of the story before the Grand Jury that considered the charges against him. Inasmuch as no one has identified a cognizable risk of prejudice arising from the "dual slip" procedure itself, there was no basis for dismissing the indictment.
Accordingly, the order of the Appellate Division should be affirmed.
BELLACOSA, J. (dissenting).
We are satisfied that the trial court's particularized assessment of the entire record evidence and circumstances and conditional termination of this prosecution do not rise to the level of error as a matter of law. Its *687 conclusion that the integrity and fairness of this Grand Jury action was impaired by the manner and procedures with which the prosecutor handled the presentment (CPL 210.20 [1] [c]; 210.35 [5]) is amply supported by the record. Thus, we respectfully dissent and would reverse and reinstate the trial court's dismissal of the indictment, with leave to the People to represent.
We agree that defendant's proffered per se rule should not be adopted. That approach would inappropriately and unnecessarily restrict prosecutorial authority to present multiple, related matters to a Grand Jury, solely because an arrested citizen makes a cross complaint against an involved police officer. The long-standing theoretical and operational principle that the People retain wide discretion to present evidence and witnesses to the Grand Jury is thus not in dispute among us (see, e.g., Matter of Morgenthau v Altman, 58 N.Y.2d 1057, 1059; People v Lancaster, 69 N.Y.2d 20, 25, cert denied 480 US 922; People v Stepteau, 81 N.Y.2d 799, 800; People v Mitchell, 82 N.Y.2d 509, 515). It is certainly not the fulcrum of our difference of view about the analysis and outcome of this case.
Rather, this dissenting expression springs from the undue restriction correlatively imposed by the rule of this case on trial court authority to supervise the proper and fair conduct of Grand Jury proceedings and to review and remedy defects and prosecutorial overreachings (People v Pelchat, 62 N.Y.2d 97, 106; CPL 190.25 [6]). Even as to this concern, we have no disagreement with respect to the role of a District Attorney as legal advisor to the Grand Jury, a power that vests that executive officer with substantial, virtually unilateral control over Grand Jury proceedings (see, CPL 190.25 [6]; 190.55; People v Di Falco, 44 N.Y.2d 482, 487).
This Court has, however, consistently emphasized that prosecutorial discretion is not absolute or final and that the "duty of fair dealing" in Grand Jury proceedings owed to a potential accused is a right and protection afforded through appropriate judicial oversight (People v Pelchat, supra, 62 NY2d, at 105; see, People v Zimmer, 51 N.Y.2d 390, 395-396). Courts are, therefore, statutorily and precedentially authorized to dismiss indictments for overzealous violation of this correlative value when a prosecutorial presentment fails to conform to the requirements of CPL article 190 "to such a degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]; 210.20; see, People v Williams, 73 N.Y.2d 84, 90). *688 Moreover, it is not the burden of an accused or of us in dissent to propose "alternative" procedural rubrics for a prosecutorial failure to measure up to those high and important standards (majority opn, at 686).
The assessment of the prejudicial impairment to the Grand Jury process requires trial courts to review the entire record of the particular case in light of all the circumstances surrounding the proceeding (People v Huston, 88 N.Y.2d 400, 409; People v Sayavong, 83 N.Y.2d 702, 709). When appropriate, "a review of the Grand Jury minutes might be necessary in order to demonstrate the possibility of prejudice" (People v Di Falco, 44 N.Y.2d 482, 488, supra [emphasis added]). To be sure, the "mere showing of a defect in the Grand Jury proceedings" will not suffice (id.; People v Huston, supra, 88 NY2d, at 409; compare, People v Mitchell, 82 N.Y.2d 509, 513-514, supra).
Using these general and nuanced guideposts and rejecting the per se proposals of the defendant as well as that of the prosecution, we turn to the Trial Judge's careful and thorough review of the record and still-sealed Grand Jury minutes in this case. That court concluded that "the likelihood of prejudice" to defendant was sufficient to warrant dismissal of the indictment (People v Huston, supra). The court assayed correctly, in our view, that this so-called "dual slip" procedure created the possibility of prejudice to the defendant based on the whole factual evolvement and legal presentment. The double fault of this case is that (1) the Grand Jury was not afforded the full and fair opportunity to evaluate the entire criminal activity and interaction of the parties under its most unusual configuration, and (2) defendant's right, opportunity and decision concerning the presentment of his side of the case and story were prejudicially compromised by the strategic maneuvers of the prosecution side (see, People v Evans, 79 N.Y.2d 407, 414; CPL 190.50 [5]; People v Mitchell, supra, 82 NY2d, at 518 [dissenting opn]).
The trial court's assessment of the Grand Jury consideration of this matter reveals that, at best, there was a bifurcated, temporally distinct and seriously skewed presentment of defendant's alleged criminal activity in relation to the conduct of the shooter police officer. The record is, at worst, bare and, at least, ambiguous that an authentic "dual slip" presentment occurred here. Yet, that procedural advantage is what the prosecutor, the amicus District Attorneys' Association, and Appellate Division so assiduously strain to preserve with a per se unilateral control.
*689 The first so-called "slip" was introduced as "the People * * * against Matthew Adessa." The related "dual" subject was presented to the Grand Jury as the "[i]nvestigation in the matter  the shooting of Matthew Adessa." Apparently, a justification instruction relating to the police officer's conduct was acontextually tacked onto some other general instructions and definitions given to the Grand Jury at some different time from the testimonial evidence. While the transcript is hard to pin down, the Grand Jury evidently voted no true bill (or it voted not to investigate) as to the officer who shot defendant-appellant three times during one part of the episode at issue and only then curiously abandoned any further pursuit of the wounded, initial bat-wielding aggressor, who was allowed to flee in his car to reach a hospital on his own. The facts and prosecution, solely against the defendant-appellant, generate more questions than they answer, even for early-procedural-stage skirmishings. This is a case that does not call on anyone for an ultimate judgment of the conduct of the contending protagonists. The separate but sequential frames of conduct in the chase, confrontation, shooting and peculiar disengagement suggest that neither contender is wholly without blame of some kind. But this is not a morality play about good versus evil or whether one or the other participant is touched by an angel. It is about simple fairness of the adversarial, accusatory process in getting at the truth and the neutral Magistrate guarding and enforcing the correlative rights and duties of the parties before the tribunal.
Importantly, therefore, the trial court took the full measure of this over-all matter at this initiatory stage and discharged its directly relevant responsibility and power by concluding, on appropriate defense motion, that there was a likelihood that defendant's rights and procedural protections were prejudiced (People v Sayavong, 83 N.Y.2d 702, 711, supra; see also, People v Huston, 88 N.Y.2d 400, 409, supra; CPL 210.35 [5]). The test is not "inherent," "palpable," or "cognizable" prejudice (majority opn, at pp 679, 684, 686); it is likelihood and possibility of prejudice, a quantification the fact-finding court had just cause to find as it did on this record. Thus, in this case there is no justification for the appellate courts to disturb or nullify that judiciously founded nisi prius ruling and its carefully calibrated remedy allowing re-presentment. The trial court in this case saw enough to disturb its sense of justice and fairness in the particular presentment. Therefore, sufficient reason filtering through this sparse record for the appellate courts provides enough to sustain the trial court's probing scrutiny and ruling.
*690 Additionally, trial courts are not limited to examining a defendant's specific assertions of unfairness in these situations, but are also empowered to search the record and examine the more general claims an accused attempts to assert. This is so because in most cases, as in the case at bar, accuseds have no access to the confidential Grand Jury minutes and, therefore, are seriously disadvantaged when they try to speculate on specific challenges to the propriety of a prosecutor's usually unilateral presentation to a Grand Jury.
Frankly, that is one reason why the initial role of the trial courts in reviewing otherwise secret proceedings is so central and special under this Court's precedents and jurisprudence. They are the primary, on-the-scene gatekeepers against prosecutorial overreaching in customarily shielded proceedings. Let us be sure about what the trial court did  it rejected defendant's arguments for a general per se prohibition of dual presentments. We agree with that. It also rejected any notion of a defense entitlement to step-by-step notice of strategic prosecutorial actions. We agree with that, too. But highly significantly, it found that the particular prosecutorial activities in this case impaired the integrity of this Grand Jury to the detriment of defendant's protections by prejudicially compromising defendant's informed exercise of his statutory rights (see, People v Evans, 79 N.Y.2d 407, 414, supra; contrast, People v Mitchell, 82 N.Y.2d 509, 513-514, supra).
In sum, the trial court applied standard operating principles of "fair dealing" applicable to any Grand Jury proceeding, whether characterized or classified as "dual slip" or anything else. Its type of fact-specific, case-by-case inquiry, necessary to weigh the fairness of this Grand Jury proceeding, is appropriate and supportable, not as a matter of "deference" to trial courts, but based on the record here and given the disproportionate influence of protagonists before "independent" and "secret" Grand Juries (see, e.g., People v Robinson, 89 N.Y.2d 648, 655, n 2 [decided today]; majority opn, at 685), especially given the curiously unusual circumstances that unfolded here, factually and presentment-wise. As this Court stated unanimously in People v Evans:
"The obligation under CPL 190.50 (5) (a) to provide notice and, therefore, the concomitant right to give testimony even perhaps after an indictment has been voted but before it is filed (see, e.g., People v Young, 138 AD2d 764; People v Skrine, 125 AD2d 507), *691 is an added window given to defendants. However, the District Attorney acquires no correlative right to control or restrict the timing of the exercise of the right. This is especially important because defendant's appearance before a Grand Jury is the singular incursion on the prosecutor's otherwise exclusive stronghold" (id., at 414; contrast, People v Mitchell, 82 N.Y.2d 509, supra).
Finally, we believe it should not be said as a matter of law that the trial court erred or abused its authority based on the whole of the known, official record of proceedings in this case. Indeed, the trial court is likely to face the responsibility, on the reinstatement of this indictment against defendant, to take an appropriately judicious look, on proper motion pursuant to CPL 210.30 to inspect or unseal and turn over the Grand Jury minutes. The re-presentment might be then purged of the strongly demonstrated and realistic possibility and potentiality for prejudice that permeates this case.
The correctness of the trial court order dismissing the indictment, with leave to the prosecution to resubmit and fairly present the accusations against defendant is well founded.
Order affirmed.
NOTES
[1] The dissent's characterization of the record makes some clarification necessary. The Grand Jury presentment occurred over two days. On the first day, November 10, 1993, the Grand Jury was told that they would be considering two matters: the People against Matthew Adessa and an "[i]nvestigation in the * * * shooting of Matthew Adessa." The Grand Jury then heard the prosecution's evidence. The entire matter was continued on February 2, 1994. At that time, the Grand Jury was instructed both on the elements of the charges against defendant and on the elements of first degree assault with respect to the police officer's alleged misconduct. The elements of the justification defense were also submitted in connection with the assault charge against the police officer. While the Grand Jury transcript does not include a report of the Grand Jury's actual vote on the charges, it is fair to assume that the Grand Jury did in fact vote on the specific charges that it was asked to consider, including the assault count against the officer, and that, as the Appellate Division stated, it voted to report a "no true bill" on the assault charge.
[2] The dissent's assertion that "[t]he record is * * * ambiguous that an authentic `dual slip' presentment occurred here" is difficult to comprehend, since defendant's entire argument  as well as the trial court's holding  rests on the assumption that such a procedure was used and led to the impairment of the Grand Jury proceeding. If the "dual slip" aspect is removed from the case, defendant would have no argument at all.