People v Gordon (2024 NY Slip Op 50146(U))

[*1]

People v Gordon

2024 NY Slip Op 50146(U)

Decided on February 15, 2024

Supreme Court, Kings County

Cesare, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 15, 2024
Supreme Court, Kings County

The People of the State of New York,

against
Demetrius Gordon, Defendant.

Ind. No. 76508-2023

For Defendant: Joelle Ryu, Esq.
For the People: Jordan Krasner, Esq.

Heidi C. Cesare, J.

Defendant is charged with illegally possessing a loaded and operable pistol in public. The district attorney alleges that defendant discarded the pistol while standing on the sidewalk in view police in a vehicle. The allegations are supported by the testimony of a police sergeant and Argus surveillance video.
In an omnibus motion, defendant moves to dismiss the indictment on the ground that he testified at the grand jury without having received full discovery of the statements that he allegedly made to police. The belatedly disclosed statements are contained in snippets of the body-worn camera videos of four police officers and the audio video recording of defendant's debrief interrogation conducted at the precinct stationhouse by a police detective. The assistant district attorney at the grand jury proceeding was unaware of those statements, and defendant was not confronted with any of those statements during his testimony.
I. Factual Background
A. The Grand Jury Evidence
At approximately 2:51 a.m. on October 12, 2023, Police Sergeant Daniel Berardi, and Police Officers Kirthly Reid, Mohamed Awad, and Anthony Verone were in a vehicle on motor patrol in the vicinity of Logan Street and Blake Avenue in Brooklyn. Sergeant Berardi and Police Officers Reid and Awad heard an argument. Sergeant Berardi observed defendant "duck down by a gate" and heard "a metal sound."
Upon hearing the metal sound, the sergeant exited the vehicle and searched with a flashlight in the area where defendant had ducked down. Sergeant Berardi saw a pistol, said the code word for gun, and pointed at defendant. At that point, defendant ran. At the time, approximately five to seven other individuals were in the area and none of them ran. Officers Reid and Awad chased defendant and apprehended him. Officer Reid recovered the pistol, which [*2]was in the vicinity of 1146 Blake Avenue. The pistol was loaded and operable.
The district attorney admitted into evidence a surveillance video depicting, from afar, all the events described in the police testimony, including the chase and apprehension of defendant, which occurred across the street from where police found the pistol. The video contained no audio.
Defendant testified at the grand jury. He was forty-one years old and admitted being in the area of 1146 Blake Avenue at 2:51 a.m. He had traveled there to help his younger brother: "My little brother was in trouble. I was just going to come get him and take him home." When he arrived, people were "out there." He spotted his brother. Police arrived and "started grabbing everybody" and dragged him on the ground and threw him into a car.
Defendant denied possessing the pistol: "I never had no gun. I never even witnessed no such thing as a gun. I didn't know what happened out there." He also denied ducking down: "I never ducked down. I did nothing." When shown the portion of the surveillance video that depicted someone ducking down near a gate, defendant denied doing that: "I don't recall me ducking. Listen, sir, I ain't have no gun. I didn't throw no gun. I didn't sit no gun down. I didn't witness a gun. I didn't do none of that."
The district attorney did not confront defendant with any statements contained in his debrief interrogation or any subsequently disclosed police body-worn camera videos.
B. The Belated Disclosures of Body-Worn Camera Videos and the Debrief Video
Defendant testified at the grand jury on October 18, 2023. Two days earlier, the district attorney disclosed to defendant the body-worn camera videos of Sergeant Berardi and Police Officers Mohamed Awad, Jonathan Ortega, and Orlando Perez. Defendant had allegedly made statements to Officers Ortega and Perez while being transported to the police station. On October 17, 2023, the district attorney disclosed the body-worn camera video of Police Officer Varone.
On November 21, 2023, defendant was arraigned on the indictment in Supreme Court.
On November 22, 2023, the DD5s written by the assigned detective were approved and shared with the district attorney. In general, a detective's DD5s are not shared with the district attorney until after they have been approved by the police department. The newly approved DD5s referred to defendant's debrief interrogation video. The district attorney was unaware of the debrief video at the time of the grand jury proceeding.
On November 28, 2023, the district attorney disclosed the assigned detective's DD5s to defendant. The district attorney also disclosed 24 additional "pieces of body-worn camera footage." Four of those body-worn camera videos contained brief statements made by defendant on the street during his arrest. These were the body-worn camera videos of Matthew Bessen, Danny Cama, Thomas Costigan, and Krystal Kingston.
On November 29, 2023, the district attorney disclosed the debrief video. The debrief interrogation was conducted by Detective Phillip Bilmes in the presence of Police Officer Awad. The interrogation lasted for approximately thirty-five minutes. The detective and officer then exited the room and left defendant alone inside the room for approximately fifteen minutes before returning and removing him from the room.
Upon request of this court, defendant provided this court with a copy of the four body-worn camera videos that contained statements by defendant and the debrief video, as well as a statement of the time stamps at which any statement made by defendant could be found.
II. Legal Discussion
A. The Motions to Dismiss the Indictment and to Preclude Evidence Based upon a Discovery Violation
Defendant moves to dismiss the indictment on the ground that the district attorney failed to disclose all statements that he made to police within forty-eight hours of when he was to testify at the grand jury (see CPL § 245.10 [1] [c]). The district attorney does not dispute this discovery violation. This court must decide what relief, if any, is required for that violation. 
Defendant argues that the discovery violation denied him a meaningful opportunity to exercise his right to testify at the grand jury pursuant to Criminal Procedure Law § 190.50. But a motion to dismiss the indictment based upon an alleged violation of Criminal Procedure Law § 190.50 must be filed "not more than five days after the defendant has been arraigned upon the indictment" (§ 190.50 [5] [c]). Defendant did not file this motion within that deadline. Defendant filed this motion on December 22, 2023, about one month after being arraigned upon the indictment. The statutory deadline contains no exceptions, and the deadline was not amended by the legislature in tandem with the enactment of the discovery reforms to create an exception for the discovery violation that occurred in this case. The absence of such an exception demonstrates that the legislature did not intend for a violation of Criminal Procedure Law § 245.10 (1) (c) to be treated as a violation of a defendant's statutory right to testify at the grand jury.
In any event, this branch of the motion is untimely even if the five-day deadline was interpreted to begin running from the date of the belated disclosures. The belated disclosures were made on November 28 and 29, 2023, but defendant waited, as noted already, until December 22, 2023, to file this motion. Thus, defendant waived his claim by filing this motion more than five days after receiving the belated disclosures (see People v Webb, 195 AD2d 614, 615 [2d Dept 1993]). For the foregoing reasons, the motion to dismiss the indictment based upon a violation of Criminal Procedure Law § 190.50 is denied.
Defendant alternatively argues that the discovery violation made the grand jury proceeding defective (see CPL § 210.35). According to defendant, the discovery violation prevented defense counsel from knowing "the substantial details contained within the undisclosed [debrief] statement" and from adequately advising defendant about "the grand jury proceedings" (Ryu aff in supp of mot at ¶ 18). As explained below, however, defendant has not established that the discovery violation rendered the grand jury proceeding defective.
A grand jury proceeding is defective under Criminal Procedure Law § 210.35 (5) when the proceeding does not conform to the requirements of CPL article 190 "to such [a] degree that the integrity thereof is impaired and prejudice to the defendant may result." "This statutory test is very precise and very high" (People v Huston, 88 NY2d 400, 409 [1996] [cleaned up]). The "exceptional remedy of dismissal" is warranted in "rare cases of prosecutorial misconduct upon a showing that, in the absence of the complained-of misconduct, the grand jury might well have decided not to indict the defendant" (People v Thompson, 22 NY2d 687, 699 [2014] [cleaned up]; accord People v Arevalo, 172 AD3d 891, 892 [2d Dept 2019]). "The likelihood of prejudice turns on the particular facts of each case, including the weight and nature of the admissible proof adduced to support the indictment and the degree of inappropriate prosecutorial influence or bias" (People v Huston, 88 NY2d at 409).
In this motion, defendant does not identify any provision of CPL article 190, aside from Criminal Procedure Law § 190.50, that was violated by the belated disclosures. More importantly, defendant has not articulated a "specific theory of prejudice . . . to justify a [*3]dismissal under the statute" (People v Adessa, 89 NY2d 677, 686 [1997]). At the grand jury, defendant was never confronted or impeached with any of the statements that were belatedly disclosed, including those made in his lengthy debrief video. Defendant does not allege that he would not have testified if he had received full discovery of his statements to the police. He does not claim that his testimony would have been different if no violation had occurred. Defense counsel alleges being unaware of the "substantial details" in the debrief video but does not explain how any of that information would have altered the advice given to defendant or counsel's preparation of defendant for his testimony at the grand jury. In the end, defendant has failed to show what is needed to obtain dismissal of the indictment—that the grand jury might well have decided not to indict if the discovery violation had not occurred (see People v Thompson, 22 NY2d at 699). Accordingly, his motion to dismiss the indictment on the ground that the discovery violation impaired the integrity of the proceedings is denied.
Next, defendant moves for a sanction to remedy the discovery violation. The discovery statute only permits this court to grant a remedy or sanction "that is appropriate and proportionate to the prejudice suffered by the party entitled to disclosure" (CPL § 245.80 [1] [a]). For the reasons stated earlier, defendant has not established that he was prejudiced by the belated disclosures. The drastic remedy of dismissal is not warranted based on the conclusory allegations that "the calculus of counsel's advice would have been entirely different" and that "the interrogation video would have been a key piece of material to be used to prepare Mr. Gordon for the prosecution's extensive cross examination" (Ryu aff in supp of mot at ¶ 25). 
Defendant also moves to preclude the district attorney from admitting his grand jury testimony at trial (see Ryu aff in supp of mot at ¶ 27). However, as noted already, defendant must demonstrate that this sanction is commensurate with the prejudice suffered by him, and defendant has not established prejudice at the grand jury or any other prejudice that "flows ultimately to trial" (id. at ¶ 26). Based on the present record, the motion to preclude the district attorney from using defendant's grand jury testimony as evidence at trial is denied.
Lastly, contrary to defendant's argument, the discovery violation does not warrant precluding the district attorney "from introducing his statements to police at trial" (Ryu aff in supp of mot at ¶ 27).
B. The Motion to Dismiss the Indictment for Legal Insufficiency and Other Fatal Defects
The motion to dismiss or reduce the indictment for legal insufficiency and other fatal defects is denied. After inspecting the grand jury minutes and exhibits in camera, this court finds that the evidence was legally sufficient to support each count of the indictment (see CPL § 190.65 [1]). The district attorney's legal instructions provided the grand jury "with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime" (People v Calbud, Inc., 49 NY2d 389, 394—395 [1980]; see CPL § 190.25 [6]). The grand jury proceeding was not defective within the meaning of Criminal Procedure Law § 210.35 (5) (see People v Huston, 88 NY2d at 407). Release of the full grand jury minutes is denied (see CPL § 210.30 [3]).
C. The Motion to Dismiss the Indictment Pursuant to the Second and Fourteenth Amendments
The branch of defendant's omnibus motion that seeks to dismiss the three counts of the [*4]indictment as unconstitutional under the Second Amendment and New York Constitution is denied. This branch of the motion challenges the constitutionality of the Penal Law article 265 offenses and New York's handgun licensing law. Under Executive Law § 71 (3), this court "shall not consider" such a motion unless proof of service upon the New York State Attorney General was filed with the court. Defendant, here, did not file proof of such service. Accordingly, this court will not consider the merits of the constitutional challenges made by defendant in the motion (see People v Brown, 64 AD3d 611, 611 [2d Dept 2009]). The motion is, therefore, denied for failure to serve the motion on the Attorney General.
D. The Motions to Suppress and Preclude Evidence
The motions for Dunaway and Huntley hearings are granted with the consent of the district attorney. The motion for a Mapp hearing to suppress the pistol seized in the vicinity of 1146 Blake Avenue is granted regardless of whether the motion alleges facts that mandate a hearing. This Mapp motion appears to be "grounded in the same facts involving the same police witnesses" as the Dunaway hearing previously consented to by the district attorney (People v Mendoza, 82 NY2d 415, 429 [1993]). In the absence of a showing by the district attorney that the Mapp motion is not grounded in the same facts and witnesses as the Dunaway motion, judicial economy favors granting the Mapp hearing (see id. at 429—430). Defendant bears the burden at the hearing of establishing that he has standing to challenge the police seizure. The district attorney's argument that defendant abandoned the pistol is referred to the hearing court.
The motion for a Mapp hearing to suppress testimony about, and evidence derived from, the police seizure of the butt of a cigarette that defendant allegedly smoked while in police custody after the arrest is granted in favor of judicial economy. This motion appears to be grounded in the same facts and witnesses as the Huntley motion.
The motion for a pretrial voluntariness hearing to decide the voluntariness of any non-noticed statements that defendant allegedly made to the police and that the district attorney intends to use on cross-examination if defendant testifies at trial is denied, with leave to renew upon factual allegations demonstrating the existence of such statements and subject to Criminal Procedure Law § 255.20 (3).
The motion for a pretrial voluntariness hearing for statements allegedly made to civilians is denied, with leave to renew upon factual allegations demonstrating the existence of such statements and subject to Criminal Procedure Law § 255.20 (3).
The motion to preclude unnoticed statements and unnoticed identification testimony, pursuant to Criminal Procedure Law § 710.30 (3), is denied as premature, and with leave to renew if the district attorney seeks to admit any such evidence at trial in the case in chief.
The Sandoval application is referred to the trial court. The district attorney is reminded of the supplemental discovery requirement for uncharged "misconduct and criminal acts of the defendant" to be used at trial "for impeachment" (CPL § 245.20 [3]).
E. The Motions for Orders Directing Disclosure of Favorable Evidence
The motion for an order directing the district attorney to comply with defendant's various demands for discovery of favorable evidence is granted to the extent provided for in CPL article 245 and the decisional case law defining the district attorney's constitutional duty to disclose favorable evidence to the defense (see e.g. Brady v Maryland, 373 US 83 [1963]).
The request for a "Brady Order" is denied.
* * *
The motion for the reservation of the right to file additional motions is denied without prejudice and with leave to renew subject to Criminal Procedure Law § 255.20 (3).
So ordered.
Dated: February 15, 2024
Brooklyn, NY
Heidi C. Cesare, A.J.S.C.