People v Mendoza (2024 NY Slip Op 50994(U))

[*1]

People v Mendoza

2024 NY Slip Op 50994(U)

Decided on July 30, 2024

Supreme Court, Queens County

Yavinsky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 30, 2024
Supreme Court, Queens County

The People of the State of New York

against
Francisco Daniel Trejo Mendoza, Defendant.

Indictment No. 71006/2024

ADA Jennifer Camillo (Queens County District Attorney) for the People.
Mary Beth Anderson, Esq. (Queens Defenders) for the Defendant.

Michael J. Yavinsky, J.

The Defendant, Francisco Daniel Trejo Mendoza, has submitted an omnibus motion, dated June 28, 2024, seeking: invalidation of the People's certificate of compliance and dismissal of the indictment; inspection of the Grand Jury minutes and reduction or dismissal of the indictment; preclusion of statement evidence; preclusion of identification evidence; suppression of statement evidence; suppression of identification evidence; a Bill of Particulars; the preservation and production of recordings; any and all Brady material; disclosure of vicious or immoral acts and a Sandoval hearing; and the reservation of rights to make further motion. The People's response, dated July 17, 2024, provides a Bill of Particulars but otherwise opposes the relief sought. The Court decides the motion as follows:
The Defendant's Motion to Invalidate the People's Certificate of Compliance
The Defendant has moved to invalidate the People's certificate of compliance (which was served and filed on April 16, 2024) because he argues that there is one item of discovery which has not been disclosed and is therefore in dispute: the complainant's Sexual Assault Forensic Exam (SAFE). 
The Defendant argues that the People's certificate of compliance was not valid because the People did not disclose the SAFE report and that the People had knowledge that such report existed because the complainant testified in the Grand Jury about having DNA taken from her and because her medical records reflect that a SAFE exam was done. In their response, the People argue that they acted with due diligence because those records are not in their custody and control and that sending a subpoena, dated January 8, 2024 (only eight days after the complainant was discharged from the hospital) for all of the complainant's records was sufficient. The People affirm that they disclosed to the Defendant all of the records they received in response to the subpoena.
CPL § 245.20(1) requires the People to disclose to the defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or [*2]control of the prosecution or persons under the prosecution's direction or control". The People must disclose this initial automatic discovery within twenty calendar days of the Defendant's arraignment where the defendant is in custody (CPL §245.10[1][a][i]) unless the discoverable materials are "exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution," in which case an extension may be granted pursuant to CPL §245.70 (CPL §245.10[1][b]). Furthermore, pursuant to CPL §245.60, both the People and the Defendant have a continuing duty to disclose "additional material or information which it would have been under a duty to disclose pursuant to any provisions of this article had it known of it at the time of a previous discovery obligation or discovery order".
"[W]hether the People made reasonable efforts to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented" (People v Bay, 41 NY3d 200 [2023]). "Although the statute nowhere defines 'due diligence,' it is a familiar and flexible standard that requires the People 'to make reasonable efforts' to comply with statutory directives (id. quoting People v Bolden, 81 NY2d 146, 155 [1993]).... Although the relevant factors for assessing due diligence may vary from case to case, the courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material might have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of missing discovery" (Bay at 212). 
The Court has considered the factors that the Court of Appeals listed in Bay and finds that the People have exercised due diligence in providing discovery for this case. First, considerable efforts have been made by the People to generate the discovery they are obligated to turn over in this and every case. For example, the Queens County District Attorney's Office has established a Discovery Compliance Unit to coordinate with law enforcement agencies in an effort to streamline both interagency communication and the exchange of discoverable information. Additionally, the Queens County District Attorney's Office has also established a Law Enforcement Officer Witness Unit to obtain disciplinary information for their witnesses as well as a Forensic Science Unit to obtain scientific and forensic evidence that may exist in any case. Finally, the Queens County District Attorney's Office has also embedded paralegal discovery liaisons in many of its bureaus, whose duties and responsibilities include interacting with a variety of law enforcement agencies in an effort to oversee discovery compliance and to troubleshoot any outstanding discovery issues. The creation of these additional units and allocation of resources to generally address their discovery obligations under CPL Article 245 support a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Second, in comparing the amount of discovery turned over to the amount of discovery outstanding, it is clear that the People have exercised due diligence. It is not in dispute that the People have turned over voluminous discovery, including hundreds of files, which contained thousands of pages of material and attachments including at least 32 body-worn camera videos, hundreds of pages of DD5s, vouchers, and police disciplinary records, and medical records. In contrast, the outstanding discovery consists of one medical report. It is self-evident that the comparison of the discovery turned over to the discovery outstanding supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Third, in analyzing the complexity of this case, all indications provided to this Court is that the instant case is not a particularly complex case.
Fourth, it does not appear to this Court that the People missed any discoverable material in this case other than the SAFE report. The fact that the People did not miss any discoverable material other than the SAFE report supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case. 
Fifth, the People's explanation for the SAFE report error is reasonable. The People promptly sent a subpoena for "any and all" of the complainant's hospital records just eight days after she was discharged from the hospital. The People received hospital records in response to that subpoena and disclosed those records to the Defendant. The People reasonably believed that the SAFE report had been included in that initial set of hospital records. This supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Finally, the response by the People when they learned of the missing discovery (SAFE report) further indicates an exercise of due diligence. The People's response indicates that they have taken additional steps to obtain the SAFE report after the Defendant's motion to invalidate their certificate of compliance was made. The Court's staff sought to clarify which additional steps were taken. In an e-mail dated July 22, 2024 (which has been made part of the Court's file), the People indicate that they: 1) examined the original subpoena to ensure that any and all documentation related to the complainant's medical treatment were requested; 2) instructed a paralegal to contact Elmhurst Hospital's legal department and request the missing documents as well as informing the hospital's legal department that a HIPAA waiver had already been sent; 3) actually contacted the legal department and learned that the hospital was requesting additional language on the subpoena in order to obtain the SAFE report; and 4) sent a new subpoena for the SAFE report with the language the hospital required. The People affirm that they will disclose this report to the Defendant as soon as they receive it.[FN1]
The People timely pursued all discovery corrections in this case, and that also supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligations in this case. 
In total, the People have exercised due diligence and made reasonable efforts to identify mandatory discovery prior to filing their certificate of compliance in this case. Accordingly, the Defendant's motion to invalidate the People's certificate of compliance, deem their statement of readiness illusory, and to dismiss the indictment due to a violation of her right to a speedy trial is denied.
The Defendant's Omnibus Motion
The branches of the motion seeking to inspect the Grand Jury minutes and dismiss or [*3]reduce the indictment are granted only to the extent that the Court has inspected the minutes of the Grand Jury. "To dismiss [or reduce] an indictment on the basis of insufficient evidence before a Grand Jury, a reviewing court must consider whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury" (People v Gaworecki, 37 NY3d 225 [2021], quoting People v Grant, 17 NY3d 613, 616 [2011]). The Court must determine if the evidence adduced before the Grand Jury was legally sufficient, meaning "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL §70.10[1]; People v Castro, 202 AD3d 815 [2d Dept 2022]). The evidence must provide prima facie proof of each offense, rather than proof beyond a reasonable doubt (People v Hulsen, 150 AD3d 1261, 1262 [2d Dept 2017]; see also People v Jessup, 90 AD3d 782, 783 [2d Dept 2011]). The reviewing court's inquiry is limited to "whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes, and whether the Grand Jury could rationally have drawn the guilty inference" (Gaworecki, supra, quoting Grant, supra).
The Court finds that the evidence adduced before the Grand Jury was legally sufficient to support all counts of the indictment. The People "maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused" (People v Thompson, 22 NY3d 687 [2014]; People v Mitchell, 82 NY2d 509, 515 [1993], citing People v Lancaster, 69 NY2d 20, 25 [1986]).
Moreover, the District Attorney properly instructed the Grand Jury on the relevant law (People v Tunit, 149 AD3d 1110 [2d Dept 2017], citing People v Calbud, Inc., 49 NY2d 389 [1980]). To the extent that the Defendant alleges defects in the presentation of the case to the Grand Jury, the Court finds that the presentation was not defective as a matter of law. The minutes reveal that a quorum of the grand jurors was present during the presentation of evidence and at the time that the District Attorney instructed the Grand Jury on the law. No unauthorized person within the meaning of CPL §190.25 was present at any time during the proceedings (see People v Sayavong, 83 NY2d 702 [1994]). Also, no irregularity that would impair the integrity of the Grand Jury occurred (see People v Adessa, 89 NY2d 677 [1997]; People v Huston, 88 NY2d 400 [1996]). The release of additional Grand Jury minutes beyond what has been turned over by the People pursuant to the discovery provisions of Article 245 of the Criminal Procedure Law is denied since defense counsel has failed to demonstrate any compelling need for such action and the Court is able to determine the motion without assistance (see CPL §210.30[3]).
The branch of the motion seeking a Bill of Particulars and demand for discovery is granted to the extent provided by the People pursuant to CPL § 200.95 and CPL § 245.20.
The branch of the motion seeking preclusion of unnoticed statements made by the Defendant to members of law enforcement is granted. Absent a showing of good cause, the People are precluded from the use of any unnoticed statements on their direct case (see People v O'Doherty, 70 NY2d 479 [1987]).
The branch of the motion seeking to preclude identification testimony is granted. Absent a showing of good cause, the People are precluded from the use of any unnoticed police-arranged identifications on their direct case (People v McMullin, 70 NY2d 855 [1987]).
The branch of the motion seeking to suppress identification evidence is denied. In their response, the People affirm that there were no police arranged identifications which occurred in [*4]this case. The Court has reviewed the submissions of the parties and sworn grand jury testimony and is satisfied that the relationship between the Defendant and complainant, who were in an intimate relationship and lived together, was not distant or fleeting. Any identification of the Defendant made by the complainant was confirmatory (see People v Rodriguez, 79 NY2d 445 [1992]; People v Waring, 183 AD2d 271, 274 [2d Dept 1992][The confirmatory identification exception requires a case-by-case analysis which "rests on the length and quality of prior contacts between the witness and the defendant, but always requires a relationship which is more than fleeting or distant."]).
The branch of the motion seeking to suppress statement evidence is denied. In their response, the People affirm that they did not provide notice of any statements made by the Defendant to members of law enforcement and do not seek to use any such statements on their direct case.
The branch of the motion seeking the disclosure of Defendant's prior uncharged criminal, vicious or immoral acts is granted to the extent that the People are directed to adhere to the time-period for disclosure pursuant to CPL § 245.20(p). 
The branch of the motion seeking a Sandoval hearing is referred to the trial court (see People v Sandoval, 34 NY2d 371 [1974]; Luck v US, 348 F2d 763 [DC Cir 1965]; People v Ventimiglia, 52 NY2d 350 [1981]; People v Molineux, 168 NY 264 [1901]).
The People are directed to make every effort to preserve Rosario material as well as all 911 calls, radio runs, sprint reports, surveillance footage, and any other recordings that are relevant to this case and make them available to the Defendant at the appropriate time as prescribed by CPL § 245.10 and CPL § 245.20(1)(g) (see People v Rosario, 9 NY2d 286 [1961]; People v Consolazio, 30 NY2d 446 [1976]).
The branch of the motion seeking all Brady material is granted to the extent that the Court reminds the People of their obligations under Brady v Maryland, 373 US 83 (1963).
The branch of the motion reserving the right to make further motions is granted to the extent permitted by CPL §255.20.
This constitutes the decision and order of the Court.
Dated: July 30, 2024
Queens, New York
Michael J. Yavinsky, A.J.S.C.

Footnotes

Footnote 1:The People have stated that the Defendant failed to diligently confer about this issue. As an example, defense counsel had reached out to the assigned Assistant District Attorney on May 20, 2024, and asked for assistance in locating the Grand Jury minutes. The People responded via e-mail on the same date, providing the date, time, and file name of the Grand Jury minutes. However, the Defendant never conferred about the SAFE report. The People contend — and the Court agrees — that had the defense conferred about this item sooner, the People would have taken similar remedial steps earlier.